UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

VASUKI PERIYASWAMY,

    Plaintiff,

v.

JAWAHAR KARUPPASAMY, et al.,

    Defendants.

CIVIL ACTION NO. 13-11548-PBS

**MEMORANDUM AND ORDER**

July 30, 2014

Saris, C.J.

For the reasons stated below, the Court dismisses this action.

## I. BACKGROUND

Before the Court are the defendants' motions to dismiss the amended complaint (#5) of pro se plaintiff Vasuki Periyaswamy. The amended complaint is lengthy-117 pages, typed and single-spaced. Periyaswamy names nine persons as defendants, and approximately thirty-seven persons as "other parties."

While some of the specific factual allegations are difficult to understand, the thrust of the amended complaint is that Periyaswamy has been

> subjected to continuing 24/7 organized transnational torture combined with 24x7 Transnational organized surveillance filled with threat, several forms of Terrorism, cruel, inhuman degrading treatment, reputation harm, humiliation, enforced isolation, virtual imprisonment, porno threats, career sabotage, financial damage, obstruction of justice, witness tampering, witness harassment to coerce into sex trafficking or to force her to commit suicide through humiliation; remorse, and grief to conceal the

commission of pervasive gross violation of
Domestic/International Human rights coordinated by the
defendants and other parties.

Amend. Compl. ¶ 05 (as in original); see also id. ¶ 120.

According to the amended complaint, prior to the plaintiff's arrival in the United States from India in August 2003, she was abused, received death threats, and otherwise subject to harassment and surveillance. Is April 2004, she allegedly was the subject of job recruitment fraud by Praveen Amudala, who helped her apply for jobs when she was in Chicago but also made unwelcome sexual advances, threatened to kidnap her, harassed her, and was responsible for "organized gangs" harassing, torturing, and coercing, and enticing her into prostitution her while she lived in San Diego. See Amend. Compl. ¶¶ 18-34. The plaintiff alleges that Amudala's organized gang combined with the gang of Michael Boyette, the plaintiff's neighbor in San Diego, "collaboratively tortured the plaintiff, exchanging the methods of abuse by each of the gang members and campaigning numerous nasty hideous lies about plaintiff and 24x7 threats to cause reputational harm. See id. ¶ 34.

Other persons, also belonging to "transnational organized gangs" allegedly victimized the plaintiff with threats, surveillance, prostitution solicitations, and murder attempts as she traveled to and returned from India, and resided in Houston. See id. ¶¶ 42-55. The plaintiff alleges that, in Houston, she was "systematically followed and surrounded," she was "followed by many 'john doe' of the gangs with threats from [the] shelter

2

to her home back and forth," and that those who tried to help her were even "also tailgated and threatened." Id. ¶ 54.

The plaintiff represents that she lived in Minneapolis for a few months in 2008, during which time gang member Sandhya Jankiti coordinated with Amudala and other gang members to keep "the plaintiff at 24x7 electronic /non-electronic surveillance and 24x7 interceptions and coordinated the abuse and harassment. Id. ¶ 58. The plaintiff's only friend in Minneapolis was allegedly "also surrounded and kept in unlawful surveillance both at workplace and outside workplace." Id. ¶ 63.

According to the amended complaint, since May 2008 she has been subjected to constant surveillance and harassment while living in Massachusetts. Before her arrival in Massachusetts "the gang" was supposedly "systematically expanded to surround her place of residence in MA" and also a "home invasion group was formed around the apartment she leased" in Quincy. Id. ¶ 65. Shortly after her arrival in Massachusetts, defendant Vankata Batchala was transferred from India to plaintiff's place of employment, where "he coordinated the covert torturous harassment" along with Agrawal and Amudla. Id. ¶ 66. When the plaintiff made friends at work, they were also allegedly "followed and kept in surveillance." Id. ¶ 72.

Periyaswamy alleges that in 2008 she brought some of her concerns about continuing torture and harassment by Angrawal to her employer, who informed her after an investigation that her allegations could not be substantiated; her employer also allegedly delayed her application for permanent residency. See

id. ¶¶ 80-86, 100. The alleged harassment, surveillance, and torture allegedly continued: "As the myriad of clandestine activities continued along with her torturous harassment without any effect in giving complaint, plaintiff searched for information on the internet and as when she found information, the organized gangs increased their gravity and severity of their clandestine activities and tortured her more." Id. ¶ 108. According to the amended complaint, the plaintiff and her friends continued to be subject to hostility (including retaliation) at work, interference with immigration status and marriage plans, and cyber terrorism and surveillance. She also claims that she was sexually assaulted by an attorney when she traveled to India in 2011, and that her lawyers (who were influenced by the transnational gangs) poorly represented her. See id. ¶¶ 153-177.

The plaintiff brings claims for "Inhuman Treatment," "Abusive Interference to Privacy," "Abusive Interference to Privacy of Communication," "Obstruction of Justice," "Intentional Interference in Employment Relationship," "Hostile Work environment," "Unlawful interception of wire, electronic, oral communications," "Freedom of Association," "Unlawful torture, cruel, Inhuman, degrading treatment," "Civil Remedy for Enticement into Slavery," "Freedom of Residence," "Damage to Property/conveyance," "Enforced Isolation/Virtual Imprisonment," "Assault," "Right to Life," "Unjust Enrichment," "Domestic and International Terrorism," "Intentional Infliction of Emotional Distress," "Negligent Infliction of Emotional Distress," "Robbery," "Medical Expenses," "Unfair and Deceptive Trade

4

Practices," "Alien Action For Tort," "Coercion and Enticement Into Prostitution," and "Domestic and International Terrorism."

Six defendants have responded to the complaint and have moved for dismissal for lack of personal jurisdiction and for failure to state a claim upon which relief may be granted. In regards to the latter, the defendants argue that the amended complaint does not meet the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants these motions to dismiss. The Court also denies the motions for default judgment in regards to the three defendants who have not responded to the complaint.

## II. DISCUSSION

### A. Personal Jurisdiction

In order to exercise personal jurisdiction over a defendant, the Court must find sufficient contacts between the defendant and the forum to satisfy both the state's long-arm statute and the due process clause of the Fourteenth Amendment. See Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir.1995); Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir.1994). "[T]he Supreme Judicial Court of Massachusetts has interpreted the state's long-arm statute as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir.2008) (quotations and citations omitted). Accordingly, for purposes of evaluating whether this court has personal jurisdiction over the defendants, it is appropriate to dispense with the statutory inquiry and "proceed directly to the

constitutional analysis." Id.

Due process requires the Court to determine whether the defendant has maintained "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). Accordingly, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir.1999). "Jurisdiction is proper ... where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State." Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal. Solano Cnty., 480 U.S. 102, 109 (1987) (quotations and citation omitted).

The Court may exercise two types of personal jurisdiction—general or specific. "General jurisdiction 'exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state.' " Mass. Sch. of Law at Andover v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir.1998) (quoting United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir.1992)). "Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a

defendant's forum-based activities, such as when the litigation itself is founded directly on those activities." Id.

The plaintiff bears the burden of establishing a prima facie case authorizing personal jurisdiction. See U.S.S. Yachts, Inc. v. Ocean Yachts, Inc., 894 F.2d 9, 11 (1st Cir.1990). "If the plaintiff makes a prima facie showing of jurisdiction supported by specific facts alleged in the pleadings, affidavits, and exhibits, its burden is met." Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 979 (1st Cir.1986). However, in making this determination, the Court does "not credit conclusory allegations or draw farfetched inferences." Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994); see also In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 676 (2d Cir. 2013); Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 (10th Cir. 2008);

In the instant case, the plaintiff has sufficiently pled general personal jurisdiction over defendants Batchala and Agrawal, who were the plaintiff's co-workers in Massachusetts. Indeed, these defendants have not moved to dismiss based on lack of personal jurisdiction.

However, the plaintiff has not made a prima facie case of personal jurisdiction over any of the other defendants because she has not made specific allegations, presented exhibits, or otherwise adduced evidence indicating that they maintained minimum contacts with Massachusetts such that requiring them to litigate in this jurisdiction would not violate the principles of due process. Plaintiff's theory of liability is that, by 2011,

all of the defendants-and many other individuals and entities-were organized into transnational gangs that were harassing her in Massachusetts twenty-four hours a day through surveillance, intercepting her communications, surrounding her apartment, stalking her, and other "covert torturous harassment filled with violence, [and] threats." Amend. Compl. ¶ 83. However, she does not identify any specific acts of misconduct within Massachusetts by any defendant other than by her co-workers Batchala and Agrawal. Because the Court cannot rely on "conclusory allegations" or "farfetched interferences," in determining whether it may exercise personal jurisdiction over a party, the plaintiff's general allegations of unspecified acts of torture and harassment in Massachusetts do not provide the basis for general or specific personal jurisdiction over any of the defendants except Agrawal and Batchala.[1]

---

[1] The Court recognizes that Jankiti, Shivraj Arali, and K.S. Pandiarajan have not responded to the complaint. Arali and Pandiarajan apparently reside in India. The plaintiff has requested that default judgments enter against these defendants. She also asks, in the alternative, that she be allowed to serve Pandiarajan through publication. Assuming for purposes of this order that the plaintiff properly served Jankiti, Arali, and Pandiarajan, the Court may consider defects in personal jurisdiction when a default judgment is to be entered. See Pilgrim Badge & Label Corp. v. Barrios, 857 F.2d 1, 3-4 (1st Cir. 1988). The Court may also consider the motions to dismiss for lack of personal jurisdiction of pro se defendants Vivek Pandian and Rahini Palanikumar (identified by the plaintiff as Rahini Kumarasamy, see docket entry #17) even though they did not raise this defense in their earlier-filed motions to dismiss for failure to state a claim upon which relief can be granted. See, e.g., Goodwin v. Housing Authority of New Orleans, C.A. No. 11-01397, 2014 WL 1691544, at *2 (E.D. La. Apr. 29, 2014) and cases cited therein (pro se plaintiffs may raise a personal jurisdiction defense even after filing responsive pleadings).

**B. Rule 8(a) of the Federal Rules of Civil Procedure**

As to defendants Batchala and Agrawal, the Court will grant their motions to dismiss for failure to state a claim upon which relief may be granted.[2] Under Rule 8(a) of the Federal Rules of Civil Procedure, to state a claim for relief a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's obligation to provide the grounds of her claim "requires more than labels and conclusions." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A court is not "bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Further, "only a complaint that states a *plausible* claim for relief" states a claim upon which relief may be granted. Ashcroft v. Iqbal, 556 U.S. 662, 679 (emphasis added).

As noted above, the plaintiff's allegations of continuous torture by all the defendants are non-specific, conclusory, and, as presented, implausible. For purposes of determining whether the plaintiff has stated a claim for relief, the Court will not credit such allegations.[3] To the extent that the plaintiff has

---

[2] Because the Court finds that the plaintiff has failed to state a claim upon which relief may be granted against Batchala and Agrawal, the Court need not consider their argument that service was improper.

[3] This is not the first instance that the Court has noted the implausible nature of the plaintiff's allegations and her failure to comply with Fed. R. Civ. P. 8(a). See Periyaswamy v. Comcast of Massachusetts I, Inc., C.A. No. 12-10474-DJC, docket #28 (Nov. 13, 2013 D. Mass.) (order granting defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6)). Although both actions concern Periyaswamy's allegations of uninterrupted surveillance by

9

made allegations about particular actions by Batchala or Agrawal, see, e.g., Amend. Compl. ¶ 70 ("Venkata Batchala constantly asked [the plaintiff's] whereabouts as part of coercing her . . . ."), they do not state a claim upon which relief may be granted.

### III. Conclusion

Accordingly, for the reasons stated above:

1. The motions to dismiss for lack of personal jurisdiction (## 22, 27, 75, 77) are GRANTED.

2. The joint motion of Batchala and Agrawal to dismiss for failure to state a claim upon which relief may be granted (#58) is GRANTED.

3. The motions for default judgment (## 39, 40, 107, 108, 109) are DENIED based on lack of personal jurisdiction.

4. All other motions shall be terminated, and this action is DISMISSED. This action is dismissed.

SO ORDERED.

7/30/14
DATE

PATTI B. SARIS
Chief, U.S. District Judge

---

transnational organized crime, the earlier action was only brought against the plaintiff's internet provider.